COSBY et al. v. HARTS et al.

No. 9258.

Circuit Court of Appeals

Seventh Circuit.

July 23, 1948.

Rehearing Denied Sept. 29, 1948.

690

B. Lacey Catron and G. Norman Kennedy, both of Springfield, Ill., and Lyman Mangus, of Lincoln, Ill. (Sorling Catron & Hardin, of Springfield, Ill., and Lord, Bissell & Kadyk, of Chicago, Ill., of counsel), for appellant.

Leland P. Miller, of Lincoln, Ill., and Clayton J. Barber, Hugh J. Graham and Hugh J. Graham, Jr., all of Springfield, Ill., for appellee.

Before SPARKS and MAJOR, Circuit Judges, and STONE, District Judge.

SPARKS, Circuit Judge.

This is an appeal from the dismissal for want of equity of a bill of complaint which sought primarily to have an executor's deed and a quitclaim deed, both relating to the same property, declared fraudulent and void and set aside.

The real estate involved was a part of the estate of May Barrett Chappelear who died testate in 1937 leaving as her only heir her son, Mark Barrett Cosby, Sr., the husband of appellant, now Mrs. Milem, and the father of the other appellant, Cosby, Jr., then a minor not yet fifteen years of age. By will, Mrs. Chappelear left all her real estate in trust to appellee Johnston, with directions to pay the net income therefrom for life to her son, and after his death, to the lawful heirs of his body living at the time of his death, and upon the death of the last survivor of such heirs, or in the event there were no lawful heirs of his body, the trust was to terminate and the corpus to be distributed to the heirs of certain other relatives. Johnston was also nominated as executor of her will, and he qualified as such in the Logan County Court which approved the will January 25, 1938.

In May 1938, Johnston, as executor, filed petition in the Logan County Court asking for leave to sell certain real estate to pay debts. He was represented throughout this proceeding, as in the probate proceedings, by an attorney, Edwin Mills, a cousin of Cosby, Sr., who asked Johnston to employ him. The property selected for sale was a 425 acre farm, the Skelton farm, located in Logan County. As parties defendant to the petition to sell, Johnston named only Cosby, Sr., the Hancock Insurance Company which held a mortgage on the farm on which there was then due $40,034, two tenants in possession, and two specific legatees of personalty under the will. The sale was held on July 2, pursuant to order of June 6; appellee Harts was high bidder at $6,472 for the equity, including all 1938 crops; he took the property subject to the mortgage indebtedness, although he did not assume such indebtedness.

The executor's report of sale was filed on July 6, and on July 16, Cosby, Sr., filed objections to the report prepared by Mills who told him, however, that he could not represent him in urging those objections since he represented the executor. The exceptions were based on the alleged inadequacy of price which Cosby asserted did not represent a fair valuation of the premises and was caused by inadequate advertising of the sale so that interested persons who might have attended and bid for the property knew nothing about it, and as a result, only two persons bid although there were others ready, willing and able to bid larger amounts if the property were ordered

resold. The report on the sale had been set for hearing on July 18, and on that day, the court continued that hearing to August 2, on which day it set the exceptions for hearing also.

Cosby, Sr., died on July 21, leaving as his only heirs his widow and son, appellants here. When the report and exceptions came on for hearing on August 2, according to the testimony of Mills, he alone was present in court, and when the fact of Cosby's death was referred to, the judge observed that the objections could be overruled since there was no one there to push them, whereupon he entered an order overruling the exceptions, approving the report, confirming the sale, and directing Johnston to execute and deliver a proper deed to the purchaser. This order, after setting forth the facts as to the mode of publication, filing of the report, and conduct of the sale, recited that it appeared to the court, from the evidence and proofs submitted, that the sale was had in due conformity to law and for a fair valuation price, and that the exception was not well taken. Pursuant to this order the executor executed his deed conveying the real estate to Harts on August 3, 1938. Subsequently, on August 25, 1939, both appellants executed a quitclaim deed for the same property to Harts. The son was still a minor; the attorney who drafted the deed explained to him his right to disaffirm it upon reaching his majority.

On July 1, 1939, Johnston, as executor of the will of Mrs. Chappelear and trustee thereunder, and also as administrator of the estate of Cosby, Sr., filed a petition in the Circuit Court of Logan County to construe the will. This suit, which appears to have been started at the instigation of appellants, resulted in a ruling that the clauses of the will purporting to set up the trust in real estate contravened the rule against perpetuities and therefore failed and that the entire estate sought to be devised as trust property descended as intestate property to Cosby, Sr., as the heir of Mrs. Chappelear. See Johnston v. Cosby, 374 Ill. 407, 29 N.E.2d 608, affirming the decree of the Logan County court. This case was decided October 15, 1940, by the Illinois Supreme Court, three years before Cosby, Jr., reached his majority, and a little over two years

after the execution of the executor's deed now sought to be avoided.

On May 8, 1944, both appellants executed a document (recorded May 20, 1944), captioned a "Notice claiming title to certain real estate and disaffirming deeds," wherein, after reciting that they had been induced by fraud and improper influence and without knowledge of their legal rights to execute the quitclaim deed above referred to and that such deed was without consideration, and that Cosby, Jr., was at the time of such execution a minor, both disaffirmed and repudiated the deed. The instrument further recited that Harts' interest in the property, arising out of the executor's deed or any other conveyance, was without merit in law or equity and wholly void, and any interest appearing of record to be in Harts was held by him as trustee of a constructive trust for the use and benefit of the undersigned Cosby, Jr., and Mrs. Milem.

The present suit was filed in the United States District Court for the Southern District of Illinois, May 22, 1944, six months after Cosby, Jr., became of age. Johnston and Mr. and Mrs. Harts were joined as parties defendant. Jurisdiction was based on diversity of citizenship. By their suit, Mrs. Milem and Cosby, Jr., sought to recover the Skelton farm previously conveyed to appellee Harts by Johnston's executor's deed pursuant to the order of the Logan County court, and by the quitclaim deed above referred to. As a basis for the relief prayed, they alleged that the sale to Harts was void on the two-fold ground of fraud and collusion, and jurisdictional defect arising out of absence of necessary parties in the proceeding to sell. On August 16, 1945, appellees filed their objections to the jurisdiction, asserting that the proceeding was a collateral attack upon a decree of the Logan County court sitting in Probate and having full jurisdiction over estates and the sale of real estate of decedents to pay debts. They also denied all allegations of fraud and collusion.

After full hearing on all issues presented by the parties, the court rendered its findings of fact to the effect that the land was fairly sold, for a fair price, and that since appellant Mrs. Milem had confirmed the executor's sale by her quitclaim deed more

than a year thereafter and made no claim against the purchaser until more than five and a half years thereafter, she had been guilty of laches and was estopped from asserting the invalidity of the proceedings in the Logan County Court. The court did however, find that appellant Cosby, Jr., had timely elected to disaffirm the quitclaim deed.

The court concluded that the equities of the cause were with the defendants, and that the plaintiffs were entitled to no relief except the setting aside of the quitclaim deed as to appellant Cosby, Jr., which the court found had been timely disaffirmed by him. It further concluded that the Logan County court had jurisdiction of all persons having any vested interest in the real estate decreed to be sold, and that all persons in privity with them were bound by the decrees and orders of that court in that proceeding; that none of such orders were subject to collateral attack in the proceeding here involved; that all interest of Cosby, Sr., in the land here involved, and all interest of appellants which stemmed from him, were disposed of by that proceeding; that inasmuch as jurisdiction of the subject matter and the parties had attached to the Logan County Court, that jurisdiction was not lost or impaired by the death of Cosby, Sr., after sale under the decree and before the sale was approved by the court; that if there were any error or irregularity in those proceedings they could be attacked only in that court, and not by the collateral proceeding of the suit at bar. It therefore decreed that neither of the plaintiffs had any right, title or interest in the real estate involved, set aside the quitclaim deed as to Cosby, Jr., and dismissed the bill of complaint for want of equity except for that limited relief.

Appellants state the primary issue here as "whether or not the decrees of the County Court of Logan County entered in the proceedings to sell the Skelton Farm to pay debts in the Chappelear Estate, are binding as res judicata on the Plaintiffs' interests in such a way as to bar them from asserting title against Harts, who purchased at the sale." We think this is not quite a precise statement of the issue. In our view, the question is not whether the proceeding to sell was final and conclusive and subject to no attack whatever, but rather, whether the proper mode of attack was chosen. We have no doubt that the entry of the decree after the death of Cosby, Sr., without substitution of his heirs, was erroneous, but the question is what form of attack could be used to correct the error.

Appellants state, "The present suit is not a collateral attack on the judgment of the county court but rather is a suit in equity by third parties directly asking for relief from the effects of that judgment." While it is true that it is often stated that there are many situations in which a court of equity may exercise jurisdiction to afford appropriate relief from judgments,[1] it also appears to be firmly established that a court of equity will not interfere with a judgment obtained in another court merely because it is erroneously or irregularly entered.[2] Hence, whether such proceeding be described as a collateral or a direct attack, it appears to be available only under such circumstances as render the original judgment or decree void and subject to collateral attack.

The question is, then, whether the irregularities of the proceeding to sell, following the death of Cosby, Sr., were such as to impair the jurisdiction of the court to enter a valid decree which would be binding as to the subject matter and the parties and all in privity with such parties, or merely rendered such decree voidable by appropriate action.

We think this question was definitely answered by the Illinois Supreme Court in the case, Claflin v. Dunne, 129 Ill. 241, 121 N.E. 834, 835, 16 Am.St.Rep. 263. There the court distinguished between the situation arising when suit was brought against a dead person, followed by judgment against him, and that when the action was begun during the lifetime of the person, but judgment rendered after his death, without substitution of his heirs or legal representatives. In the former case, the court held that there was no doubt as to the lack of

---

[1] See 31 Am.Jur., Judgments, sec. 621 et seq., and cases there cited.

[2] Ibid, sec. 634 and cases there cited.

jurisdiction of the person, hence the invalidity of a judgment rendered against him, which invalidity could be established by collateral proceeding. In the latter case, however, where action was started during the life of the party, and jurisdiction acquired over the person and the subject matter, it held that, while the matter was not entirely free from difficulty, according to the better authority, the judgment rendered after the death of the defendant was voidable, but not void. It quoted from Freeman on Judgments, section 153, "Judgments for or against deceased persons are not generally regarded as void on that account, * * * and while the court ought to cease to exercise its jurisdiction over a party when he dies, its failure to do so is an error to be corrected on appeal, if the fact of the death appears upon the record, or by writ of error coram nobis, if the fact must be shown aliunde." See also Pyatt v. Riley, 252 Ill. 36, 41, 96 N.E. 570; Streeter v. Chicago Title and Trust Co., D.C., 14 F.2d 331, and cases there cited; Error Coram Nobis, 31 Ill.L.R. 644 at 651; Annotation, 49 L.R.A. 153, at page 170; Freeman on Judgments (5th Ed.) section 406.

We think the situation which arose in the Claflin case is analogous to that of the case at bar. Here, in fact, as was determined by the later decision of the Illinois court construing the will, Cosby, Sr., the sole heir of Mrs. Chappelear, took her entire estate in real property by intestate succession, subject, of course, to the payment of her debts. It therefore appeared that other persons having life and remainder interests under the void bequest were not necessary parties to the proceeding to sell real estate, and the omission to name them which would, perhaps, have been a fatal defect had the bequest been valid, was immaterial under the circumstances. Hence the Logan County Court acquired jurisdiction over the subject matter and all necessary parties to the proceeding to sell the real estate of the estate of Mrs. Chappelear. That jurisdiction was not divested by the later death of

Cosby, Sr., and while the decree, entered without substitution of his heirs, was undoubtedly erroneous, the error was not such that it could be corrected by this proceeding.

Appellants attempt to distinguish the Claflin case on the ground that it was an action in assumpsit and had nothing to do with the effect of a judgment, in a proceeding to sell real estate, on the title of non-parties who had succeeded to the title on the death of a party before judgment and before hearing. They say that the only issue there before the court was whether the administrator of the deceased party defendant was entitled to have the judgment vacated and set aside on a motion in the nature of coram nobis made in the same suit in which the judgment was rendered, and that the court held that he was. We think this statement sharply points up the difference in procedure in the two cases, entitling the representative of the decedent to the relief prayed in the Claflin case, and not entitling appellants here to the same kind of relief. Had appellants here sought reversal of the decree by proceeding in the same suit there seems no doubt of their right to some relief under the authorities referred to above, although the scope of that relief is, again, a different question, the extent to which they would be bound by the objections filed by their decedent. They mistake their status in the proceeding in asserting that they were entitled to be parties to the original proceeding to sell. They had no interest in the property during the lifetime of their decedent. "No one has heirs during lifetime." Richardson v. Roney, 382 Ill. 528, 47 N.E. 2d 714, 717. Hence their only interest was a derivative one, accruing upon his death intestate, and subject to proceedings instituted during his lifetime.[3]

We need not speculate upon the possibilities which might have arisen from Mrs. Milem's inchoate spouse's interest in real estate inherited by her husband from his mother, subject to payment of her debts,

---

[3] Cf. Botsford v. O'Conner, 57 Ill. 72, where a posthumously born child was held entitled to be represented in a proceeding to sell real estate of his father, instituted before the child's birth; Alward v. Borah, 381 Ill. 134, 44 N.E.2d 865, where parties who purchased real estate from heirs prior to a proceeding to sell to pay debts of the decedent were held entitled to be made parties to such proceeding.

694

inasmuch as the court found that she executed a quitclaim deed prepared at her suggestion, thereby voluntarily relinquishing any interest she might have had in his interest in the farm.

We have refrained from setting forth the facts as to the alleged fraud and collusion. They appear quite unsubstantial—there was no convincing evidence to sustain the charges but instead, we think the evidence was sufficient to sustain the findings of the court that the sale was fairly conducted and the land fairly sold, hence, by implication, that there was no fraud or collusion. As we have viewed the appeal, only one question was presented, and that a question of law, whether failure to substitute the heirs of Cosby, Sr., following his death, for a hearing on the objections filed by him, and other subsequent actions, constituted such error as to invalidate all steps taken after his death in the proceeding to sell. We agree with the conclusion of the District Court that the Logan County Court had jurisdiction of the subject matter of the proceeding and of all necessary parties, hence jurisdiction to enter the orders entered by it, and that no error or irregularities in such orders could be attacked by the suit at bar.

Judgment affirmed.