(No. 25751.—■■■■■■■■)

PERCY B. JOHNSTON, Exr., Appellee, *vs.* MARK BARRETT COSBY, JR., *et al.* Appellants.

*Opinion filed October 15, 1940.*

GUNN, J., specially concurring.

WILSON and MURPHY, JJ., dissenting.

DEAN HILL, guardian *ad litem* for appellant Mark Barrett Cosby, Jr.; and ROBERT R. HUMPHREY, guardian *ad litem* for other appellants.

C. H. WOODS, and TRAPP & TRAPP, for appellee.

Mr. JUSTICE STONE delivered the opinion of the court:

This cause is here to review a decree of the circuit court of Logan county construing the will of May Barrett Chappelear, deceased, who died August 31, 1937. Appellee Johnston is the executor of that will and trustee thereunder. He is also administrator of the estate of Mark Barrett Cosby, the only heir-at-law of the testatrix and her son by a former marriage, who died on July 21, 1938, leaving surviving him his widow and Mark Barrett Cosby, Jr., his son, as his only heirs-at-law. In these capacities appellee has filed the petition in this case.

The clauses of the will involved in this proceeding are the fifth, sixth, seventh and eighth, and a codicil to the will. The decree finds those clauses and codicil void as infringing the rule against perpetuities and finds that other clauses of the will, including the first, second, third, fourth and ninth, are valid. The first clause directs payment of testatrix's debts and funeral expenses. The second gives certain personal property, including jewels, to the testatrix's son Mark Barrett Cosby. The third bequeaths certain other jewels to one Mary Elizabeth Coddington. The fourth gives other jewels to Josephine M. Graff. The fifth devises all the rest, residue and remainder of her property, both real and personal, to appellee Johnston in trust, to hold, invest and reinvest, lease, manage and care for, and to distribute the income therefrom as in the will provided, after deducting all taxes, charges, expenses and other necessary outlays. This fifth clause then provides:

Par. (a-3) "After the payment of all costs, charges and expenses of my trust estate, as aforesaid, I direct my Trustee to pay and turn over the remaining annual net income to my son, Mark Barrett Cosby; said payments of net income shall be paid and turned over to said beneficiary at such time or times during the year as is most convenient for my Trustee, and as he may determine." By paragraph (b) of the fifth clause it is provided: "In the event that my said son, Mark Barrett Cosby, shall die during the existence of this trust, then I direct my Trustee to pay the net income therefrom to the lawful heirs of his body living at the time of his death, *per stirpes* and not *per capita,* and upon the death of the last survivor of them or in the event there are no lawful heirs of the body of my said son, Mark Barrett Cosby, living at the time of his death, then this trust shall cease and terminate, and I direct my Trustee to pay, turn over and distribute the entire *corpus* of my trust estate and any accumulated income thereon, to the lawful heirs of the body of my nephew, James W. Barrett, Jr., if any be living at that time, share and share alike, *per stirpes* and not *per capita,* to be theirs absolutely. In the event, however, that there are no lawful heirs of the body of my said son, Mark Barrett Cosby, or of my said nephew, James W. Barrett, Jr., living at that time, then I direct my Trustee to pay, turn over and distribute the entire *corpus* of my said trust estate and any accumulated income thereon, to the heirs of the body of my uncle, Charles Edward Coddington, share and share alike, *per stirpes* and not *per capita,* to be theirs absolutely." By the sixth clause the trustee is empowered, in case the income from the trust estate is not sufficient to pay the taxes and expenses of the trust estate, to sell, exchange, convey or mortgage the property of the trust as in his judgment and discretion it seems expedient and advantageous to do. This clause also provides that in case the beneficiary Mark Barrett Cosby is sufficiently in need of money, and the trustee deems him to

be so in need, and there is not sufficient income from the trust estate to make the necessary payments to him, the trustee may sell any part or all of the property comprising the trust estate, upon demand of the beneficiary, and turn over the proceeds to Mark Barrett Cosby.

It is provided by the seventh clause that no title or interest in any of the trust funds, or in the income thereof, or its accumulation, shall vest in any beneficiary during the continuance of the trust and no beneficiary shall acquire any right or title to any installment or installments of such income otherwise than through actual payment of such installment by the trustee, and no beneficiary is empowered to assign, anticipate or mortgage such income. It is further by this clause provided, that the trustee shall in nowise be liable, nor shall the trust estate in his hands, for any debt or liability of any beneficiary. The eighth clause provides that an annual report of the condition of the trust shall be mailed to the beneficiaries then entitled to payments from the income of the trust. By the ninth clause Johnston is appointed executor of the will.

In February, 1937, the testatrix executed a codicil to this will, by which she directed that the jewels and personal estate given outright to her son Mark Barrett Cosby by the second clause of the will, go to appellee Johnston as trustee, under the same powers, duties and obligations as set forth in the fifth clause of the will.

Two questions arise on this record: First, whether the devise under paragraphs (a) and (b) of the fifth clause of the will contravene the rule against perpetuities, and the second, if it does and the devise of the remainders fail, does the whole of the estate sought to be devised by the fifth clause descend as intestate property to the heir-at-law of the testatrix.

The rule against perpetuities provides that an interest sought to be devised to be good must vest, if at all, not later than twenty-one years and nine months after some life or lives in being at the creation of the interest. If, by

any possibility, the interest does not vest within this time, it comes within the rule and the devise is void. (*Thomas v. Pullman Trust & Savings Bank,* 371 Ill. 577; *McKibben* v. *Pioneer Trust & Savings Bank,* 365 id. 369; *Aldendifer* v. *Wylie,* 306 id. 426; Gray on Perpetuities, (1915) p. 174.) This rule applies to cases where trusts have been created. (*O'Hare* v. *Johnston,* 273 Ill. 458; *Dime Savings and Trust Co.* v. *Watson,* 254 id. 419.) It will be noted that by clause 5 of the will involved here, the net income of this trust estate is to be paid to the son of the testatrix, Mark Barrett Cosby, during his life, and in event he dies during the existence of the trust such income is to be paid "to the lawful heirs of his body living at the time of· his death, *per stirpes* and not *per capita.*" It is there also provided that if there be no lawful heirs of the body of Mark Barrett Cosby living at the time of his death, then the trust is to cease and the trustee is to pay over and distribute the entire *corpus* to the lawful heirs of the body of testatrix's nephew, James W. Barrett, Jr., living at that time; and if there be no such living then to the heirs of the body of the testatrix's uncle, Charles Edward Coddington.

The testatrix had living at the time of her death one son, the only child she ever had, Mark Barrett Cosby, who, at the time of the execution of the will and of the death of the testatrix, had one son, Mark Barrett Cosby, Jr. The provision directing that the trustee, upon the death of Mark Barrett Cosby pay the net income of the trust estate to the lawful heirs of the body of Mark Barrett Cosby living at the time of his death *"per stirpes* and not *per capita,"* contemplated as beneficiaries, more than one heir of the body of her son, though he had but one at the time of her death. The will spoke from the date of the death of the testatrix and the rule limits a valid devise to life or lives in being at that date, as that is the date of the creation of the interest.

Not only was it possible that Mark Barrett Cosby might have had other children after the death of the testatrix, who would live beyond twenty-one years after a life or lives

in being, but it is clear, from the language of the will, that the testatrix contemplated that he would have, else there would have been no occasion for her to direct that the income of the trust estate be paid to the lawful heirs of his body, living at the time of his death, *per stirpes* and not *per capita*. It is thus clear that she intended to give "heirs" of the body of Mark Barrett Cosby a portion of the income of the trust estate. Had she intended to limit the benefit to her one grandson Mark Barrett Cosby, Jr., she scarcely would have used the words *"per stirpes* and not *per capita,"* but on the other hand would have designated him by name or by referring to him as the heir of the body of her son. The will, therefore, includes not only the living grandson of the testatrix but also all other heirs of her son's body living at the time of his death. It will readily be seen that under such circumstances the payments of the income from the trust property might have continued during numerous lives not in being at the time of the death of the testatrix, so that the fee would vest at a time far beyond the limits prescribed by the rule.

The rule against perpetuities is a rule of law and not one of construction. However, in order to apply that rule it is necessary to gather from the language of the will itself, the intention of the testatrix. When that intention has been thus determined, if it violates the rule against perpetuities, the devise or bequest must fail. (*Dime Savings and Trust Co.* v. *Watson, supra; Aldendifer* v. *Wylie, supra.*) It seems clear, therefore, that clause 5 of the will is void, and that since clauses 6, 7 and 8 and the codicil, depend for their existence upon clause 5, they likewise fall.

The question then arises: Does the entire trust scheme fail because of the invalidity of provisions contravening the rule against perpetuities? Mark Barrett Cosby, Jr., appears here as separate appellant by a guardian *ad litem* who argues that while it may be said that clause 5 of the will violates the rule against perpetuities, yet the provision which

creates in Mark Barrett Cosby, Sr., a life estate, is valid, and the trust estate terminated at his death, leaving the separate appellant, Mark Barrett Cosby, Jr., as the sole heir and next of kin of his grandmother, and since his grandmother intended that a life interest only should be given to Mark Barrett Cosby, Sr., that portion of the will can be carried out, thus vesting the entire estate in this separate appellant, free from any interest of his mother who would take as the widow of Mark Barrett Cosby, Sr., if the entire trust provision is held to have failed.

The rule is that where the scheme of disposition is single and consists of interwoven provisions, and the scheme fails as to the ultimate disposition of the *corpus* of the estate, or where prejudice or injustice will result to the beneficiary if such provisions are in part sustained, the entire scheme and all provisions with regard to the trust are to be held invalid as in contravention of the rule against perpetuities. *Keefer* v. *McCloy,* 344 Ill. 454; *Millikin Nat. Bank* v. *Wilson,* 343 id. 55; *Tripp* v. *Payne,* 339 id. 178; *Lawrence* v. *Smith,* 163 id. 149.

It seems clear, from reading this will, that the testatrix had but one entire scheme by which she sought to provide that the entire trust estate, upon the termination of the trust, however remote in time, should go to the lawful heirs of the body of her living nephew, James W. Barrett, Jr., and in case of the default of such, to the heirs of the body of her uncle, Charles Edward Coddington. Also, it seems clear from the provisions of the will giving the right to her son to call for a sale of all the property and receive the proceeds to meet his needs, if the trustee agreed there was such a need, that she intended primarily to take care of him. Such a provision differentiates this trust from a spendthrift trust. She had no child except her son. He was her only heir-at-law. She knew also that she had a grandson, who was of her own blood, and that she might have other grandchildren or descendants thereof born to

the body of her son. None of the heirs of her body or of her descendants, under the provisions of the trust, was to receive more than the income. It seems unlikely that, had she known she could not make the limitation over to the lawful heirs of the body of her nephew or her uncle in the manner attempted, she would have deprived her own blood of the fee simple interest in the estate. This, it seems to us, is a case where the testatrix had in mind but one complete scheme for disposition of her property, and under the law the failure of one provision defeats the scheme as a whole and the estate must descend, therefore, as intestate property to the son of the testatrix, not as life tenant but as her heir-at-law. (*Easton* v. *Hall,* 323 Ill. 397; *Barrett* v. *Barrett,* 255 id. 332; *Pitzel* v. *Schneider,* 216 id. 87; *Dime Saving and Trust Co.* v. *Watson, supra.*) To hold otherwise in this case would be making a new will for the testatrix. This courts may not do. *Lawrence* v. *Smith, supra.*

While it is the rule, as argued by the separate appellant, that where it is in accord with the intention of the testatrix, portions of the will which in themselves are valid, may be sustained where no injustice arises to beneficiaries as a result, yet that rule is only invoked in aid of and assistance to the manifest intent of the testator, and where no injustice to a beneficiary results. It seems clear to us that this is not such a case.

The chancellor was right in his construction of the will, and the decree is affirmed.

*Decree affirmed.*

Mr. JUSTICE GUNN, specially concurring: I agree with the conclusion reached but not with all the reasoning of this opinion.

WILSON and MURPHY, JJ., dissenting.