Rule 23 order filed
April 10, 2008;
Motion to publish granted
June 6, 2008.

NO. 5-06-0436

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| CHARLES JEFFREY ROBINSON, | ) Appeal from the |
| | ) Circuit Court of |
|    Plaintiff-Appellant, | ) Jackson County. |
| | ) |
| v. | ) No. 03-CH-52 |
| | ) |
| NORTH POND HUNTING CLUB, | ) |
| a Partnership, DAVID A. PORTER, | ) |
| as Trustee of the North Pond Hunting | ) |
| Club Trust Number Two, DAVID A. | ) |
| PORTER, CHARLES A. VOICE, | ) |
| DANIEL R. FULK, ROBERT R. | ) |
| WITHERELL, LARRY HOTTES, | ) |
| DONALD R. PORTER, CHARLES | ) |
| SCHIMPF, and DU QUOIN STATE | ) |
| BANK, | ) Honorable |
| | ) Mark H. Clarke, |
|    Defendants-Appellees. | ) Judge, presiding. |

_____

JUSTICE CHAPMAN delivered the opinion of the court:

As a result of a disagreement, the members of the North Pond Hunting Club, a group of avid hunters who had come together to purchase and improve land in furtherance of their hobby, determined that one memberЅthe plaintiff, Charles Jeffrey Robinson–needed to be removed from membership in the land trust which owned the hunting property in question. The proposal to remove Robinson was not to his liking, and he filed a complaint for a partition against all remaining parties to the land trustЅmembers of the North Pond Hunting Club. Following a three-day bench trial on Robinson's complaint for a partition, the trial court denied his complaint on August 1, 2006. Robinson appeals. We reverse and remand.

The North Pond Hunting Club began in 1983 when eight duck hunters came together to purchase 80 acres of hunting ground in Jackson County. A land trust was drafted by an

1

attorney. The legal title to the land was in the name of David Porter as the trustee for the North Pond Hunting Club. All eight men held a beneficial interest. In 1986, the land trust purchased an additional, adjacent 40 acres of land. No one contends that this original land trust agreement was invalid.

A ninth man, Robinson, was friends with the original eight members and had been allowed to hunt the land. Sometime in 1991, at a cost of $20,000, Robinson purchased 40 acres of adjoining land that were higher in elevation. Robinson's 40 acres offered a better ingress and egress to the 120 acres.

In exchange for a 1/9 interest in the hunting club land trust, Robinson offered his 40 acres (1/4 of the total land) to the other land trust beneficiaries. The eight original members agreed to this deal.

The original land trust document would no longer be effective with the addition of Robinson's acreage. Instead of returning to an attorney to have a new land trust drawn up, one of the men who had limited law school experience offered to create the new document. All nine members signed the document, dated August 31, 1991. The original eight members also executed a revocation of the original land trust conditional upon Robinson's transfer of his 40 acres into the new trust within 30 days. At that time, the original 120 acres were not transferred into the name of the new land trust but remained in the ownership of the original land trust. In the second land trust document, the drafter eliminated a termination clause requiring the sale of the land if the land remained in the trust for a period of 20 years.

On December 2, 1991, Robinson signed a warranty deed transferring his 40 acres from his name into the name of the original land trust. At some time after this date, an attorney noticed the title discrepancy and caused a new deed to be prepared, signed, and filed, correcting this error.

The new land trust document expressly valued each member's share at $20,000.

In 1992, one of the original members, Delmar Fulk, died. His widow was allowed to sell his 1/9 share to a man named Jim Justice, for $20,000.

Thereafter, work began on Robinson's original 40 acres, tearing down old cabins and constructing a new cabin, with construction costs totaling about $40,000. Each member helped to build the cabin and each paid a share of the costs associated with construction. Robinson contends that because he worked in a construction-related field, he did most of the physical labor on this project.

From August 31, 1991, until some time in 2003, the hunting club members used the land in accordance with their practice and the land trust agreement. Conflicts among the nine men developed in 2002 and 2003.

The conflict related to the fact that Robinson, apparently without the express approval of the other eight members, hired an acquaintance of his to perform some clearing on the property. The bulldozer work done was not to the satisfaction of the hunting club. The club refused to pay this man's bill, and a lawsuit was filed against the land trust. Robinson and Jim Justice went ahead and paid their 1/9 shares of the contractor's bill, which enraged the other seven members, who claimed that those payments resulted in the acknowledgment of the debt so that a judgment was entered against the land trust by the court. Robinson went ahead and personally paid the judgment.

Jim Justice offered to sell his 1/9 interest. The remaining eight members voted to purchase his share for $23,000.

Seven of the remaining eight members met outside of Robinson's presence in order to discuss his membership in the group. As a result of this meeting, the decision was made to expel Robinson. The resolution to expel was drafted and signed before the meeting was held in which Robinson was to be given the opportunity to discuss what had transpired. The other seven members tendered a $20,000 check to Robinson.

3

Robinson refused the tender of the check, and he brought this complaint for a partition.

Robinson advanced two arguments at the trial. His first argument related to the elimination of the 20-year mandatory-sale provision from the second land trust document, which left the land trust without a termination date, thereby invalidating the trust. Additionally, Robinson argued that because his original warranty deed attempting to transfer his 40 acres into the second land trust transferred the property into the North Pond Hunt Club–a nonexistent entity–the transfer was void *ab initio*. Under this theory, Robinson sought the return of his original 40 acres.

A bench trial was held on May 5, 2006, and June 8 and 9, 2006. After the bench trial, the parties submitted written briefs. In the defendants' written brief, they acknowledge that "a properly drafted land trust agreement must contain a termination date." However, they argued that this failing should not prohibit the court from finding a resulting trust. And the defendants argued that there is no absolute right to a partition. Regarding the warranty deed purportedly transferring Robinson's 40 acres into an nonexistent entity, the defendants essentially contend that Robinson could only have intended to transfer his acreage to the correct entity and that the subsequent warranty deed prepared and filed years later corrected this problem. Regarding partition in general, the defendants argued that the land trust agreement which all parties signed clearly implied that a partition was not allowed. The agreement contained a first-refusal clause, which mandated that any party who wanted out of the group had to offer his portion to the other members first.

In its lengthy order, the trial court denied Robinson's partition request, finding that if the land trust failed, at best Robinson had only a 1/9 interest in his original 40 acres. The trial court applied the express expulsion terms, allowing the club's decision to expel Robinson and to pay him only $20,000 for his interest. The trial court did not specifically

4

determine whether the second land trust agreement was void due to the lack of a mandatory-sale provision.

Generally speaking, because a complaint for a partition is seeking equitable relief, we review the matter on a manifest-weight-of-the-evidence standard. *Wright v. Wright*, 131 Ill. App. 3d 46, 50, 475 N.E.2d 556, 560 (1985). Individual questions of law that the trial court might or might not have resolved in reaching its decision to deny Robinson's complaint for a partition will be reviewed on a *de novo* basis. *UnionBank v. Thrall*, 374 Ill. App. 3d 785, 789, 872 N.E.2d 542, 546 (2007).

Simply stated, Robinson contends that because the second land trust did not contain a definite termination date and/or because his initial warranty deed transferred his 40 acres into a nonexistent entity, the land trust to which he was a party was void. The defendants contend that the land trust is merely voidable, and they suggest that the trial court was looking at the legal document in totality. The defendants argue that the land trust terms clearly evidenced an intent by the members that the land could not be partitioned.

Because a determination of the validity of the land trust was critical to the case's outcome, the trial court should have addressed these issues. The lengthy court order does not include any specific discussion of the validity of the trust document. The order spells out Robinson's arguments, but instead of discussing those arguments, it finds that the trust document should be followed because of the intent of the parties. However, if the land trust was not initially valid, then the intent of the property owners with regard to the application of the land trust provisions is irrelevant.

Robinson and the defendants both acknowledge that the second land trust agreement was flawed because it did not include a definite termination period. At issue then is whether or not Illinois law requires the inclusion of such a provision for the validity of the remainder of the land trust document. And if the trust as written is invalid, we must next decide if

5

Illinois law would allow an equitable trust under the circumstances of this case.

What we know is that in the attempt to update and change the land trust, the definite termination period required in order for the trust document to have complied with the common law rule against perpetuities and the Illinois statutes concerning perpetuities prior to 1998 (765 ILCS 305/1 *et seq.* (West 1996)) was omitted.

The rule against perpetuities at common law provided "that an interest sought to be devised to be good must vest, if at all, not later than twenty-one years and nine months after some life or lives in being at the creation of the interest." *Johnston v. Cosby*, 374 Ill. 407, 410, 29 N.E.2d 608, 610 (1940). While fairly recent Illinois legislation allows persons with a trust interest to "opt out" of that time restriction (see 765 ILCS 305/3, 4 (West Supp. 1997)), that was not the case at the time this second land trust was created. The supreme court has held that if there is any possibility that the trust interests will not vest within that time frame, "the devise is void." *Johnston*, 374 Ill. at 410-11, 29 N.E.2d at 610; *Thomas v. Pullman Trust & Savings Bank*, 371 Ill. 577, 583, 21 N.E.2d 897, 899 (1939). The consequence that the devise is void stems from the fact that the rule against perpetuities is a rule of law, and not simply a rule of construction. *Johnston*, 374 Ill. at 412, 29 N.E.2d at 610. In order to determine if the rule against perpetuities applies, the court must interpret the trust document at issue to see if the intentions of the trustee and interest holders can be ascertained from its wording. *Thomas*, 371 Ill. at 583, 21 N.E.2d at 899.

Here, it is clear that while the omission of the trust termination period was a mistake based upon ignorance of the clause's purpose, the clause was omitted in order to keep the trust intact perpetually without the need to "sell" the property within 20 years. While the interest holders' reason for omitting the clause was flawed, the intent to thwart the rule against perpetuities existed. And, therefore, the interest must fail as being void for remoteness. See *Smith v. Renne*, 382 Ill. 26, 29, 46 N.E.2d 587, 589 (1943).

6

This situation is different from cases that would allow the separation of the void gift or devise from the balance of the will or trust, because this case does not involve separate devises. See, *e.g.*, *Johnston v. Cosby*, 374 Ill. 407, 414, 29 N.E.2d 608, 611 (1940) (citing the general rule that allows the balance of the will to be upheld, so long as no injustice to the beneficiaries results and to do so assists the donor's or testator's intentions).

In addition to the problem with the second land trust failing to contain a termination clause, there is a problem with the revocation of trust agreement executed by the beneficiaries of the first land trust. The revocation purported to revoke the first land trust agreement. A requirement contained within the revocation agreement states as follows:

"It is also understood and agreed that if title to the aforementioned property is not transferred to the trustee within 30 days of the date first written above, then this document of revocation will be considered null and void and the trust known as North Pond Hunting Club Trust Number One will be deemed in effect as if this document of revocation had not existed."

The "aforementioned property" is Robinson's original 40 acres. It is undisputed that Robinson did not transfer his acreage into any trust within 30 days. Additionally, Robinson's warranty deed was flawed because the deed did not purport to transfer the 40 acres to the trustee of the second land trustS"North Pond Hunting Club Trust Number Two"Sbut, instead, attempted to transfer the property to a nonentity called "North Pond Hunting Club." While this error was ultimately discovered and corrected some years later, the fact remains that two things happened which, according to the express term of the revocation agreement, rendered the second trust "null and void."

In addition, the facts reveal that the 120 acres that were a part of the first land trust were not transferred into the second land trust.

All parties ask us to apply equity and conclude that all 160 acres are the subject of a

7

resulting trust in light of the seeming failure of the second trust. Robinson would then have us partition the property nine ways. The defendants ask us to follow the express terms of the void trust document, which would only require them to pay Robinson $20,000 for his share as a result of his expulsion from the hunting club.

Upon careful review of the facts and the law, we decline to follow either suggested approach.

Because of the reasons stated in this order, we find that North Pond Hunting Club Trust Number Two is invalid. This trust is invalid because it violates the rule against perpetuities. Because the trust stands alone as one legal document with one subject and is not a part of a larger "package," there is no way to separate out this void aspect, as one might be able to do in a void provision within a trust or will. Additionally, the express terms of the revocation agreement were not met, and thus the second land trust is null and void with the first trust still being intact. Consequently, as a result of the invalidity of the second land trust, the original 120 acres remain subject to the first land trust, to which Robinson is not a beneficiary or party.

Robinson's original 40 acres remain his own and are not a part of the first land trust.

Because he is not a party to the original land trust, Robinson is not entitled to a partition relative to the original 120 acres. Furthermore, because he is not a member of the first land trust, the members' expulsion efforts are ineffective.

Robinson's initial complaint sought "any other and further relief" found appropriate by the court. In this court, Robinson's first request for relief asks us to equitably restore the parties to their positions prior to the void contract and subject to the equitable mortgage for the improvements upon his property.

In order to correct the paperwork and any titles in furtherance of this order, and to resolve issues related to the construction of the cabin on Robinson's 40 acres and his agreed-

8

to equitable mortgage, we remand this case to the trial court for further proceedings.

For the foregoing reasons, the judgment of the circuit court of Jackson County is hereby reversed, and the cause is remanded.

Reversed; cause remanded.

STEWART, P.J., and GOLDENHERSH, J., concur.