NOTICE
This order was filed under Supreme
Court Rule 23 and may not be cited
as precedent by any party except in
the limited circumstances allowed
under Rule 23(e)(1).

2020 IL App (4th) 190382-U

NO. 4-19-0382

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 6, 2020
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| JOHN AABERG, | ) | Appeal from the |
| Plaintiff and Counterdefendant-Appellee, | ) | Circuit Court of |
| v. | ) | McLean County |
| JAMES AABERG, JEFFREY AABERG, and BUSEY | ) | No. 16CH159 |
| BANK, Successor to Main Street Bank and Trust, | ) | |
| Defendants, | ) | Honorable |
| (James Aaberg, Defendant and Counterplaintiff- | ) | Rebecca S. Foley, |
| Appellant). | ) | Judge Presiding. |

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Turner and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court reversed the trial court's judgments terminating the land trust
and ordering the partition and sale of the leasehold estate previously held in the
land trust but affirmed the trial court's judgment denying James's motion for
leave to amend his counterclaim.

¶ 2   In August 2016, plaintiff, John Aaberg, a beneficiary of a land trust that held a
leasehold estate in land owned by the City of Bloomington, filed a complaint seeking a
declaration that the written instrument purporting to create the land trust violated the rule against
perpetuities and, as a result, that he and defendant, James Aaberg, John's brother who is also a
beneficiary of the trust, owned undivided interests in the leasehold estate as tenants in common
instead of beneficial interests in the land trust. John also requested a partition and sale of the
leasehold estate.

¶ 3         In November 2016, James filed a counterclaim for reimbursement of the expenses he had incurred maintaining the subject property. James later attempted to amend his counterclaim to include additional expenses, but the trial court denied his motion for leave to amend.

¶ 4         The trial court (1) entered a declaration that the written instrument purporting to create the land trust violated the rule against perpetuities and John and James owned undivided interests in the leasehold estate, (2) partitioned the leasehold estate and ordered its sale, and (3) ordered John to pay James $16,273.78 as reimbursement for expenses James had incurred maintaining the property.

¶ 5         On appeal, James argues the trial court erred by (1) declaring the land trust violated the rule against perpetuities, (2) ordering the partition and sale of the leasehold estate, and (3) denying his motion for leave to amend his counterclaim. We affirm in part and reverse in part.

¶ 6                                I. BACKGROUND

¶ 7         In August 2016, due in part to an alleged dispute concerning his right to convey his beneficial interest in a land trust, John filed a complaint seeking a declaration that the written instrument purporting to create the land trust violated the rule against perpetuities.

¶ 8                          A. The Trust Agreement

¶ 9         In December 2005, Jeffrey, James, John, and Anne Aaberg executed a "Trust Agreement and Declaration of Trust" (Trust Agreement) with Main Street Bank & Trust (Main Street) purporting to create a land trust. Main Street agreed to serve as trustee, while Jeffrey, James, John, and Anne were the beneficiaries. Contemporaneous to the execution of the Trust Agreement, Main Street, as trustee, entered into a lease agreement with the City of Bloomington

(City) for land—24765 Thornapple Lane (the Premises)—located on Lake Bloomington and owned by the City, and Aaron and Lora Egbers conveyed their leasehold estate in the Premises to Main Street by deed in trust. The lease commenced upon execution and terminates on December 31, 2131.

¶ 10        Pursuant to the terms of the Trust Agreement, Main Street held the legal and equitable title to the leasehold estate in the Premises. The beneficiaries held the exclusive right to possess, manage, and control the Premises and to receive the net proceeds of any disposition thereof. Thus, a beneficial interest in the land trust was considered personal property. The relevant sections of the Trust Agreement state as follows:

"(a) [The leasehold estate] shall be held for the ultimate use and benefit of the following persons and in the following proportions: Jeffrey Aaberg (25%), James Aaberg (25%), John Aaberg (25%) and Anne Aaberg (25%). *If one of the beneficiaries predeceases the remaining beneficiaries, the deceased beneficiary's share is to be divided equally among the remaining beneficiaries.* They shall be entitled to the earnings, avails and proceeds of said real estate, or interest therein, according to the respective interest herein set forth.

(b) The interest of any person or any beneficiary hereunder shall consist solely of the power of direction over the title to said property and the right to receive the proceeds from sales or rentals of said property and such interest of the beneficiary shall be deemed *** personal property and may be assigned as such; *also in case of death the right, title or interest of any beneficiary hereunder shall pass to his or her executor or administrator and not to his or her heirs at law*, and no beneficiary hereunder shall have at any time any right, title or interest in or to

any of such real estate as such, but only in the proceeds or avails thereof, it being the intention of this instrument to vest the full and complete legal and equitable title to said property in said Trustee. The death of any beneficiary hereunder shall not terminate the trust nor in any manner affect the powers of the Trustee hereunder.

(c) No assignment or other instrument conveying the interest of any beneficiary hereunder shall be binding on the Trustee in any manner until the original or an executed duplicate copy of such assignment or other instrument is deposited with and acknowledged by the Trustee.

* * *

(i) *The trusts hereby created shall in no event last longer than twenty years from the date hereof* and if any property remains in this trust at the end of such period then the same shall be sold at public auction by the Trustee on such notice as it may deem reasonable and the proceeds of sale shall be divided among the beneficiaries in the proportion of their interest hereunder. The Trustee will make every effort to avoid a public sale as a procedure for terminating the trust, and will advise the beneficiaries of the approaching date of expiration of the trust. *Upon the expiration date, the Trustee may, in its discretion, extend the term.*" (Emphases added.)

¶ 11 In 2011, Anne Aaberg died and bequeathed all of her personal property in equal shares to John, Jeffrey, and James, leaving them as the remaining beneficiaries of the trust. In September 2016, Jeffrey conveyed his interest in the trust to James. Thus, for purposes of this

appeal, the parties agree that John and James were the sole beneficiaries of the trust; John had a one-third interest and James had a two-thirds interest.

¶ 12                                    B. John's Amended Complaint

¶ 13          In February 2017, John filed an amended complaint to reflect Jeffrey's conveyance of his interest to James in September 2016. Count I sought a declaration that the Trust Agreement violated the rule against perpetuities and that John and James owned undivided interests in the leasehold estate as tenants in common. Count II is not relevant to this appeal. Count III sought an order for the partition and sale of the leasehold estate.

¶ 14                          1. *Proceedings on Count I: Declaration That the*
                          *Trust Agreement Violates the Rule Against Perpetuities*

¶ 15          In June 2017, John filed a motion for judgment on the pleadings on count I in which he requested the following relief: "(A.) Construe the Trust Agreement and the rights of the beneficiaries thereunder; (B.) Declare that the Trust Agreement violates the Rule Against Perpetuities, and the Plaintiff owns an indivisible one-third fee leasehold interest in the Premises." John argued the Trust Agreement violated the rule against perpetuities because it contained no provision for its termination within the perpetuities period. He noted that while section (i) of the Trust Agreement initially provided that the trust "shall in no event last longer than twenty years[,]" the final sentence of the same section gave the trustee discretion to extend the term of the trust upon the term's expiration.

¶ 16          In response, James argued section (a) of the Trust Agreement contained a "last man standing" provision that prevented the trust from violating the rule because, pursuant to the terms of section (a), the trust would necessarily terminate upon the death of the surviving beneficiary, a life in being when the trust was created. John replied by noting section (a) was

contradicted by section (b), which provided that a beneficiary's interest would "pass to his or her executor" upon death, not to the surviving beneficiaries of the trust.

¶ 17    In July 2017, the trial court conducted a hearing on John's motion for judgment on the pleadings on count I. (A transcript of that proceeding is not contained in the record.) The court granted John's motion in a written order stating, "the Court finds the language of the Trust Agreement violates the Rule Against Perpetuities and Plaintiff's [motion] is granted." The court reasoned that since section (i) gave the trustee "the discretion to extend the term of the trusts, for an unlimited period *** , it is possible that the interest will not vest within twenty-one years." The court also rejected James's "last-man-standing" argument as follows: "Even if a 'last man standing' provision would save the Trust from the Rule Against Perpetuities, it is uncertain whether the Trust has such a provision, as subparagraphs (a) and (b) contradict one another relative to passing a deceased beneficiary's interest."

¶ 18                    2. *Proceedings on Count III:*
            *Partition and Sale of the Leasehold Estate in the Premises*

¶ 19    At a status hearing in August 2017, the trial court allowed John's oral motion to add a third count to his amended complaint over James's objection. Count III sought a partition and sale of the leasehold estate. John alleged the court's July 2017 written order terminated the land trust and resulted in John owning a one-third interest in the leasehold estate and James owning a two-thirds interest. As a cotenant of the leasehold estate, John alleged that he had an absolute right to its partition.

¶ 20    James filed a motion to dismiss count III with prejudice. He argued that the trial court's order did not terminate the land trust. Moreover, he asserted such an order would have violated the Statute Concerning Perpetuities (Statute) (765 ILCS 305/1 to 6 (West 2016)), which modifies the common law rule against perpetuities, because the Statute provides that a trust

- 6 -

containing a provision that would violate the rule against perpetuities is not deemed void *ab initio* but, instead, is terminated by operation of law at the conclusion of the perpetuities period. Thus, James asserted that John still had a beneficial interest in the land trust, not in the leasehold estate, and therefore did not have a right to its partition. John responded by arguing that the Statute only applies to conventional trusts, as opposed to land trusts.

¶ 21 In January 2018, James answered count III of John's amended complaint and raised the following affirmative defenses: (1) John failed to plead any facts necessary to justify termination of the land trust (*i.e.*, fraud, duress, etc.); (2) the rule against perpetuities does not apply to interests in leasehold estates; (3) the owner of a beneficial interest in a land trust cannot file a partition suit; and (4) John lacked "clean hands" to maintain the subject cause of action in equity because he had not paid his one-third portion of the maintenance expenses related to the subject property.

¶ 22 In July 2018, John filed a motion for entry of judgment of partition, again asserting he held an undivided interest in the leasehold estate and therefore had an absolute right to its partition. He contended that because the subject property had been "improved with a single-family residence, [it could not] be divided without manifest prejudice to the owners of the leasehold interest." Thus, he requested "the Leasehold Interest *** be sold by or under the direction of th[e] Court ***." James responded by raising the same arguments he raised in his motion to dismiss and motion for summary judgment, namely, that the land trust remained active by operation of the Statute and the beneficiary of a land trust has no right to partition trust property.

¶ 23 In November 2018, the trial court conducted a hearing on John's motion for partition. Although James argued the court erred by terminating the land trust, the court declined

to revisit its ruling, stating, "I'm not going to review the Court's decision related to terminating the land trust. I think the record will speak for itself in that regard." The court rejected James's "clean hands" defense because it was "a separate matter going toward monetary damages not the equitable remedy sought by the plaintiff in this case in the form of partition." Ultimately, the court granted John's motion, finding he "ha[d] the ability to proceed on [the partition] as a matter of right." The court also denied James's oral motion for a Rule 304(a) finding. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 24    Following resolution of James's counterclaim (discussed below), the trial court entered a written order on count III in June 2019. In that order the court (1) ordered the partition and sale of the leasehold estate and (2) made a Rule 304(a) finding.

¶ 25                              C. James's Counterclaim

¶ 26    In November 2016, James filed a counterclaim for reimbursement of the expenses he had incurred maintaining the Premises. In paragraph 8, James alleged that, up to that date, "all beneficiaries, in their respective proportions, have contributed towards the repair, upkeep and maintenance of the property." In paragraph 9, he alleged that John had refused to comply with repeated demands to contribute his proportionate share of the maintenance expenses. John admitted the former allegation but denied the latter. The trial court scheduled an evidentiary hearing on James's counterclaim for March 2019.

¶ 27    In February 2019, James filed a motion for leave to amend his counterclaim instanter to include reimbursement for expenses incurred prior to November 2016. James provided no argument in support of his motion. In the proposed amended counterclaim, James altered paragraph 8 to allege that all beneficiaries "agreed" to contribute their proportionate share, not that they "have" contributed. John filed a response in opposition to James's motion,

- 8 -

arguing that allowing James to amend his counterclaim on the eve of trial would prejudice John because "for the entirety of this case, the damages at issue *** have been limited to expenses incurred since November 2016."

¶ 28      In March 2019, the trial court conducted a hearing on James's motion to amend. James's counsel argued that granting his motion would further the ends of justice because he was not counsel when the counterclaim was filed (he filed his entry of appearance in October 2017) and it was only recently that he and James discovered that James was entitled to additional reimbursement from John. The trial court denied James's motion, finding none of the factors enumerated in *Loyola Academy v. S & S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215-16 (1992), weighed in favor of the amendment.

¶ 29      In May 2019, the trial court conducted a bench trial on James's counterclaim at which the court allowed James to introduce evidence relating only to maintenance expenses he had paid after November 22, 2016. James made offers of proof for the expenses he allegedly paid, without reimbursement, in 2013, 2014, and 2015. The court granted James's counterclaim in part, ordering John to pay James $16,273.78 as reimbursement for his one-third share of the property's expenses previously paid by James. James has acknowledged receipt of this amount from John.

¶ 30                    D. Postjudgment Proceedings

¶ 31      In June 2019, the trial court entered Rule 304(a) findings with respect to the following orders: (1) the July 2017 written order granting John's "Motion for Judgment on the Pleadings on Count I", (2) the November 2018 docket entry granting John's "Motion for Entry of Judgment of Partition", (3) the March 2019 docket entry denying James's "Motion for Leave of

Court to File Amended/Updated Counterclaim for Expenses", and (4) the May 2019 docket entry ordering John to pay James $16,273.78.

¶ 32    After James filed a notice of appeal in June 2019, James moved to stay enforcement of the trial court's June 2019 order that directed the partition and sale of the leasehold estate. The trial court granted James's motion.

¶ 33    This appeal followed.

¶ 34                                    II. ANALYSIS

¶ 35    James argues the trial court erred by (1) declaring the Trust Agreement violated the rule against perpetuities, (2) ordering the partition and sale of the leasehold estate in the Premises, and (3) denying his motion for leave to amend his counterclaim.

¶ 36           A. The Trust Agreement Did Not Violate the Rule Against Perpetuities

¶ 37    James first argues that the trial court erred by declaring the Trust Agreement violated the rule against perpetuities because the court failed to apply the rule as modified by the Statute (765 ILCS 305/3, 5 (West 2016)). However, he concedes that "the trial court's order would have probably been correct" if the common law rule against perpetuities applied. Thus, for purposes of this appeal, we will assume the Trust Agreement violates the common law rule.

¶ 38    James contends that the common law rule does not apply to the Trust Agreement pursuant to the plain language of the Statute (765 ILCS 305/3, 5 (West 2016)). He argues that even if section (i) of the Trust Agreement would have violated the common law rule, "the trust is not rendered void *ab initio*, but is merely terminated by operation of law at the conclusion of the perpetuities period." *In re Estate of Feinberg*, 235 Ill. 2d 256, 268, 919 N.E.2d 888, 896 (2009).

¶ 39    In response, John, relying on the Fifth District's opinion in *Robinson v. North Pond Hunting Club*, 382 Ill. App. 3d 888, 890 N.E.2d 535 (2008), and section 3 of the Trusts and Trustees Act (Act) (760 ILCS 5/3 (West 2016)), argues the Statute does not apply to land trusts.

¶ 40                             1. *The Applicable Law*

¶ 41    The Statute was enacted to modify the common law rule against perpetuities. 765 ILCS 305/2 (West 2016). Section 5 of the Statute provides the following with respect to trusts:

> "(a) Subject to the provisions of paragraphs (e) and (f) of this Section, a trust containing any limitation which, but for this paragraph (a), would violate the rule against perpetuities *** shall terminate at the expiration of a period of (A) 21 years after the death of the last to die of all the beneficiaries of the instrument who were living at the date when the period of the rule against perpetuities commenced to run ***." *Id.* § 5(a)(A).

As defined in the Statute, a trust "means any trust created by any written instrument, including, without limitation, a trust created by the exercise of a power of appointment." *Id.* § 3(a).

¶ 42    "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature. [Citation.] The best indicator of the legislature's intent is the plain and ordinary meaning of the statute." *Rushton v. Department of Corrections*, 2019 IL App (4th) 180206, ¶ 28, 123 N.E.3d 1171. "When the language of a statute is clear and unambiguous, a court must give effect to the plain and ordinary meaning of the language without resort to other tools of statutory construction." *Raintree Homes, Inc. v. Village of Long Grove*, 209 Ill. 2d 248, 255, 807 N.E.2d 439, 444 (2004). "It is a cardinal rule of statutory construction that we cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature." *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81,

919 N.E.2d 311, 316-17 (2009). "There is no rule of construction which authorizes a court to declare that the legislature did not mean what the plain language of the statute says." *Henrich v. Libertyville High School*, 186 Ill. 2d 381, 391, 712 N.E.2d 298, 304 (1998). "Statutory interpretation is a question of law reviewed *de novo*." *Rushton*, 2019 IL App (4th) 180206, ¶ 28.

¶ 43                                    2. *This Case*

¶ 44        The language of the Statute is clear and unambiguous. A "trust," as defined in the Statute, "means *any* trust created by *any* written instrument ***." (Emphases added.) 765 ILCS 305/3(a) (West 2016). The land trust in the instant case is unquestionably a trust created by a written instrument (*i.e.*, the Trust Agreement). The definition in the Statute requires nothing further. Thus, we conclude that the instant land trust falls within the inclusive definition of the Statute.

¶ 45        In support of John's contention that the Statute applies only to conventional trusts, not land trusts, he (1) asserts that the *Robinson* court terminated a land trust without applying section 5 of the Statute and (2) highlights the inherent differences between conventional trusts and land trusts, arguing that, based upon these differences, the legislature could not have intended to include land trusts in its definition of a "trust." We address each argument in turn.

¶ 46        In *Robinson*, the Fifth District held that a land trust was void for violating the rule against perpetuities because the written instrument contained no provision for the trust's termination. *Robinson*, 382 Ill. App. 3d at 893. The *Robinson* court did not apply section 5 of the Statute to save the land trust from termination. *Id.* In fact, and importantly, the *Robinson* court never even mentioned section 5 of the Statute. *Id.* However, the court did state the following with respect to the Statute: "While fairly recent Illinois legislation allows persons with a trust interest to 'opt out' of that time restriction (see 765 ILCS 305/3, 4 (West Supp. 1997)), that was

- 12 -

not the case at the time this *** land trust was created." *Id.* By "opt out," the court was referring to a "qualified perpetual trust," which is defined as "any trust created by any written instrument" that specifically states the rule against perpetuities does not apply. 765 ILCS 305/3(a-5) (West Supp. 1997). Thus, the court in *Robinson* seems to imply that the land trust at issue could have been treated as a "qualified perpetual trust" if it had been created after the Statute's amendment.

¶ 47 Given that "trust" and "qualified perpetual trust" are both defined as "any trust created by any written instrument," we see no reason why a land trust could fit the definition of one but not the other. Accordingly, we decline to accept John's suggestion that *Robinson* stands for the proposition that the Statute does not apply to land trusts.

¶ 48 As earlier noted, John also contends that consideration of the inherent differences between conventional trusts and land trusts leads to the conclusion that the legislature could not have intended to include land trusts in its definition of a "trust." See, *e.g.*, *FirstMerit Bank, N.A. v. Soltys*, 2015 IL App (1st) 140100, ¶ 21, 29 N.E.3d 568 ("Unlike the conventional trust in which the trustee is vested with broad powers over the management and disposition of the trust property, the land trustee may act only at the beneficiary's direction.") (Internal quotation marks omitted.). It is precisely because of these differences, John argues, that the legislature explicitly provided that the Act does not apply to land trusts (see 760 ILCS 5/3(2)(a) (West 2016)), and he contends that we should assume the same for the Statute.

¶ 49 We find John's argument unpersuasive. Clearly, the legislature is aware of differences between land trusts and conventional trusts, which is likely why it chose to exclude land trusts from the Act. Further, the legislature's drawing a distinction in the Act to explicitly exclude land trusts shows that the legislature knows how to make such a distinction if, in fact, it

wishes to do so. However, the Statute contains no such distinction between land trusts and conventional trusts.

¶ 50　　　　We also note that the Statute was in effect when the Act was enacted, and the Statute has been amended since the Act's enactment. Yet, the Statute's definition of a "trust" has remained constant, while the Act is clear that it does not apply to land trusts. If the legislature intended for the Statute to apply only to conventional trusts, it would have made this intention clear, as it did with the Act. Essentially, John asks us to do one of two things: either (1) read into the Statute an exception not expressed (*i.e.*, a trust is any trust, *except a land trust*, created by any written instrument) or (2) declare that the legislature did not mean "any trust" when it said "any trust." We decline to do either.

¶ 51　　　　Having determined that the Statute applies to land trusts, we also conclude that the trial court erred in terminating the land trust. The supreme court has explained that section 5 of the Statute "provides that a trust containing a provision that would violate the rule against perpetuities" is not "rendered void *ab initio*, but is merely terminated by operation of law at the conclusion of the perpetuities period." *In re Estate of Feinberg*, 235 Ill. 2d at 268. Here, the conclusion of the perpetuities period is 21 years after the death of the last surviving beneficiary living when the Trust Agreement was executed. See 765 ILCS 305/5(a)(A) (West 2016). Therefore, the Trust Agreement remains active and, if property is in the trust at the conclusion of the perpetuities period, the trust will simply terminate by operation of law.

¶ 52　　　　　　　　　　　B. The Trial Court Erred by
Partitioning the Leasehold Estate in the Premises

¶ 53　　　　James argues the trial court erred in ordering the partition and sale of the leasehold estate in the Premises. He contends that because the Trust Agreement remains active,

- 14 -

John continues to hold a personal property interest in the trust, not an interest in the Premises itself, and therefore has no right to its partition. We agree.

¶ 54                           1. *The Applicable Law*

¶ 55        Section 17-101 of the Code of Civil Procedure provides that when land is held in tenancy in common, "any one or more of the persons interested therein may compel a partition thereof by a verified complaint ***." 735 ILCS 5/17-101 (West 2016). The same right applies when the interest in the land is a nonfreehold estate (*e.g.*, a leasehold). See *Pierce v. Pierce*, 4 Ill. 2d 497, 503, 123 N.E.2d 511, 514 (1954) (holding that a leasehold is subject to partition). "The purpose of partition is to enable those who own property in common to sever their interests so that each one may take possession of, enjoy and improve his separate estate at his own pleasure. [Citation.] Where a division of the premises cannot be made without prejudice to the rights of the interested parties, the land will be sold and the proceeds divided." *Davis v. Davis*, 128 Ill. App. 2d 427, 430, 262 N.E.2d 788, 790 (1970).

¶ 56                              2. *This Case*

¶ 57        Because the Trust Agreement remains active, John and James have no interest in the land itself. Pursuant to the Trust Agreement, "no beneficiary *** shall have at any time any right, title or interest in or to any of such real estate as such, but only in the proceeds or avails thereof, it being the intention of this instrument to vest the full and complete legal and equitable title to [the Premises] in [the trustee]." Title to the Premises, both legal and equitable, is fully vested in the trustee, while John and James hold only a personal property interest in the "earnings, avails and proceeds" of the Premises. Accordingly, because title to the leasehold estate in the Premises is vested in the trustee, we conclude the trial court erred in ordering the partition and sale of the Premises. See, *e.g.*, *Breen v. Breen*, 411 Ill. 206, 209, 103 N.E.2d 625,

627 (1952) (holding that a land trust beneficiary is not entitled to partition trust property because title to said property is vested in the trustee subject to an active trust).

¶ 58                    C. The Trial Court Did Not Err by Denying
                       James's Motion for Leave to Amend His Counterclaim

¶ 59          Next, James argues that the trial court abused its discretion by denying his motion for leave to amend his counterclaim. We disagree.

¶ 60                              1. *The Applicable Law*

¶ 61          The decision to grant a party leave to amend its pleadings lies within the sound discretion of the trial court, and a reviewing court will not reverse that decision absent an abuse of discretion. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 69, 955 N.E.2d 1110. A trial court abuses its discretion when its rulings are arbitrary, fanciful or unreasonable, or where no reasonable person would take the view adopted by the court. *Pister v. Matrix Service Industrial Contractors, Inc.*, 2013 IL App (4th) 120781, ¶ 55, 998 N.E.2d 123.

¶ 62          The supreme court has instructed reviewing courts to consider the following factors to determine whether the trial court abused its discretion by denying a party leave to amend its pleadings: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Loyola Academy*, 146 Ill. 2d at 273. The paramount consideration, however, is " 'whether allowance of the amendment furthers the ends of justice.' " *Freedberg v. Ohio National Insurance Co.*, 2012 IL App (1st) 110938, ¶ 41, 975 N.E.2d 1189 (quoting *Trans World Airlines, Inc. v. Martin Automatic, Inc.*, 215 Ill. App. 3d 622, 628, 575 N.E.2d 592, 595 (1991)).

¶ 63                              2. *This Case*

¶ 64　　　　　Here, when denying James's motion, the trial court found that none of the *Loyola* factors favored James. We conclude the trial court did not abuse its discretion.

¶ 65　　　　　The first *Loyola* factor—whether the proposed amendment would cure the defective pleading—favors affirming the trial court's ruling. James did not allege in his motion for leave to amend that his counterclaim was defective. Not until the hearing on his motion did he allege that he recently discovered he may be entitled to additional reimbursement, and the trial court properly noted that this was less a defect than it was "a change in theory of the case as it relates to the damages."

¶ 66　　　　　The second *Loyola* factor—whether the other party would sustain prejudice or surprise by virtue of the proposed amendment—also favors affirming the trial court's ruling. Until James filed his motion, the parties had continuously acknowledged for over two years that John had contributed his proportionate share of the maintenance expenses up to the date James filed his counterclaim, November 22, 2016. We agree with the trial court and John that it would be prejudicial to John to allow James to alter the undisputed material facts of the case just weeks before the evidentiary hearing.

¶ 67　　　　　The third and fourth factors—whether the proposed amendment is timely and whether previous opportunities to amend the pleading could be identified—also favor affirming the trial court's ruling. Although some discovery was still ongoing when James filed his motion, the timing still supports John, as an evidentiary hearing was scheduled to take place less than three weeks after James filed his motion. Moreover, James had numerous opportunities to amend his counterclaim, as the case had been pending for over two years. James was in the best position to know if and when John had reimbursed him for payments made to maintain the property. Additionally, James's attorney argued he did not draft the counterclaim, but he entered his

- 17 -

appearance in October 2017, well over a year before the motion to amend was filed. To allow James to amend his counterclaim on the eve of trial, when he had the relevant information at the time he initially filed his counterclaim, would not further the ends of justice.

¶ 68    Based upon the *Loyola* factors, and giving due consideration to whether James's proposed amendment would have furthered the ends of justice, we conclude that the trial court did not abuse its discretion by denying James's motion for leave to amend his counterclaim.

¶ 69                                III. CONCLUSION

¶ 70    For the reasons stated, we reverse the trial court's judgments terminating the land trust and ordering the partition and sale of the Premises but affirm the trial court's judgment denying James's motion for leave to amend his counterclaim.

¶ 71    Affirmed in part and reversed in part.